### BUFFALO LOAN, TRUST & SAFE DEPOSIT CO. v. CARSTENSEN.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

BILLS—CONSTRUCTION—COLLATERAL SECURITIES.

> The officers of a corporation obtained a loan by using the corporation's stock and bonds as collateral, each obliging himself individually, if the loan was not repaid by a certain date, to purchase on demand his proportion of the collateral and pay to the lender the amount set opposite his signature, recovering on such payment his proportion of the collateral. The corporation did not require the use of all the money agreed to be loaned, the lender retaining one-third of the sum agreed to be loaned, and on failure of the corporation to pay made demand on the treasurer to purchase his proportion of the collateral, and brought suit to enforce the demand. *Held* that, as the action was of an equitable nature, and as both parties asked that equity be done, the defendant would not be relieved from his contract because of the failure of the lender to loan the full sum, nor for advances to which no objection was made by defendant as treasurer of the corporation, nor should the defendant be required to purchase more of the bonds than the proportion the amount actually loaned bore to the amount agreed to be loaned, on the payment of which he should receive the same proportion of the collateral agreed to be purchased by him.

Controversy between the Buffalo Loan, Trust & Safe Deposit Company, plaintiff, and John Carstensen, defendant, submitted under Code Civ. Proc. § 1279. Judgment rendered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Roberts, Becker, Messer & Groat, for plaintiff.
Harry B. Mingle, for defendant.

WILLIAMS, J. Judgment should be ordered for the plaintiff as demanded by it, except that the liability should be $7,500 instead of $10,500, and defendant should have the benefit of two-thirds of the $14,000 of bonds and 600 shares of stock. The plaintiff seeks to recover upon an agreement in writing either $10,500, with interest from February 17, 1905, the defendant receiving $14,000 in bonds of the Depew Manufacturing Company, or the balance of the $10,500 after a sale of the bonds, and an application of the proceeds of such sale upon the $10,500 and interest. The defendant denies all liability, and claims, if he is liable at all, the amount should be only $5,000, with interest from February 17, 1905, and asks equitable relief.

The plaintiff is a Buffalo company, the manufacturing company a Maine company. The manufacturing company was organized to

erect and equip a plant for the manufacture of mowing machines, and about January 1, 1899, purchased 20 acres of land at Depew, near Buffalo, and commenced to erect its plant thereon. Thereafter, and about February 1, 1899, for the purpose of raising money to erect and equip the plant, it issued $100,000 of bonds, and secured the same by a mortgage covering all its property, real and personal. About December 2, 1899, it had contracted debts to the amount of $20,000 and more, had been unable to dispose of its bonds, and was without money to continue the construction of its plant or equip the same. In order to temporarily raise money until it could dispose of its bonds, it applied to the plaintiff on that day for a loan of $75,000 on its note, payable June 1, 1900, with interest at 6 per cent. semiannually, secured by the $100,000 of bonds and 4,245 shares of its stock, with provision for a sale of the bonds and stock upon nonpayment of the note or interest when due or the depreciation in the value of the collaterals in the meantime. The plaintiff refused this applicaton, and thereupon the payment of said note was further proposed to be secured by the agreement in question, signed by defendant and other directors and stockholders. Defendant was a stockholder, director, and the treasurer of the company. This agreement was made, and was to the effect, in brief, that in case the manufacturing company should fail to pay the note and interest, or part of either, June 1, 1900, each subscriber would, "on demand, purchase his proportion of the bonds deposited as collateral, and pay to the trust company the amount set opposite his signature hereto, together with any then accrued and unpaid interest upon said amount, receiving on such payment his proportion of the collateral as aforesaid." Defendant's signature and amounts were as follows: "J. Carstensen $10,500 cash, $14,000 bonds, 600 shares stock." The application for the loan with all this security was granted. The plaintiff at various times down to June 1, 1900, advanced to the manufacturing company $40,000, on June 1st $5,000, and on June 19th $5,000; making in all $50,000. The remaining $25,000 was not asked for by the manufacturing company, and was never advanced. No payments have been made on the moneys advanced, excepting $14,493, leaving a balance of principal unpaid $35,507, and no interest on such balance has been paid since December 1, 1902, excepting $798.91, paid to apply thereon. Defendant has paid nothing personally upon the note. The manufacturing company has made some payments by the individual checks of the defendant loaned by him to the company. February 17, 1905, a tender by plaintiff was made to defendant of the $14,000 of bonds, and demand made that he pay plaintiff the $10,500 and receive from plaintiff his proportion of the collateral pledged with the note, and he refused to make the payment.

It seems to us that the failure by plaintiff to advance the whole $75,000 for which the note was given cannot affect the liability of the defendant for his share of the amount that was actually advanced, $50,000. The plaintiff advanced all that it was required to. There was no refusal to advance the remaining $25,000, or any part of it. The whole amount was not required at once, apparently, but

was called for as needed. The failure of the manufacturing company to call for the whole $75,000 inured to the benefit, rather than injury, of the defendant.. The defendant was the treasurer of the manufacturing company during all the time the advances were being made, and we may assume the moneys advanced on the note passed through his hands, and he knew when and in what amounts the moneys were advanced, though it is agreed that the requests therefor were made by Cobb, managing director of the company. The treasurer would naturally receive the money, and it would be disbursed by checks bearing his signature. This consideration would seem a sufficient answer to the defendant's contention that he should not be held liable in any event for the $5,000 advanced June 1, 1900, and the $5,000 advanced June 19th. If he knew of these advances, and made no objections, he would be regarded as consenting thereto, though made after the maturity of the note.

This action is equitable in its nature, and both parties ask that equity be done. The defendant should not be relieved from liability on his agreement, nor should he be required to pay his whole $10,500 in purchase of his whole $14,000 of bonds and 600 shares of stock. There would be no equity in this, the whole $75,000 not having been advanced. He should only be required to pay his proportionate share of the moneys actually advanced, $50,000, which would be $7,000 and interest thereon from February 17, 1905, the time of the tender and demand. He should have the benefit of his proportionate share of the bonds and stock upon making such payment, being two-thirds thereof.

Judgment should therefore be ordered in favor of the plaintiff as hereinbefore suggested. All concur.